UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEROLYN HALEY, | § | |
| | § | |
| *Plaintiff*, | § | CIVIL ACTION NO. |
| | § | |
| vs. | § | _____ |
| | § | |
| PRICEWATERHOUSECOOPERS, | § | |
| | § | |
| *Defendant*. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

The plaintiff, Derolyn Haley, ("Plaintiff" or "Haley"), complains of PricewaterhouseCoopers ("Defendant" or "PWC"), as follows:

### VENUE AND JURISDICTION

1. Haley is a citizen of the United States and a resident of the State of Texas.

2. Haley was a Senior Associate for PWC and venue is proper because she has been subjected to unlawful employment practices committed in the State of Texas, Northern District, Dallas Division.

3. PWC is primarily involved in the business of combining human ingenuity, experience, technology and products to help organizations build trust and deliver sustained outcomes.

4. PWC is a Delaware corporation, conducting business in Texas at 2121 Pearl Street, Suite 2000, Dallas, Texas 75201, in the Northern District, and elsewhere, and this action accrued in whole or in part in the Northern District.

5. PWC may be served with process by serving its registered agent in Texas: CT Corporation System, 1995 Bryan Street, Suite 900, Dallas, Texas 75201.

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(a)(4), and 28 U.S.C. §1337. The complaint seeks declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202.

7. This suit is authorized and instituted pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621, *et seq*.

8. This is a suit authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. as amended by the Civil Rights Act of 1991 (Title VII).

9. This is a suit authorized and instituted pursuant to 42 U.S.C. § 1981.

10. Jurisdiction of this Court is further invoked pursuant to the Texas Commission on Human Rights Act of 1983 (TCHRA), as amended, Texas Labor Code §21.001 *et. seq*.

11. This is a proceeding for compensatory and punitive damages, injunctive and other legal and equitable remedies available to secure the rights of Haley under Title VII, the ADEA, the TCHRA, and 42 U.S.C. § 1981. It is brought to prevent PWC from maintaining policies, practices, customs, or usages of discriminating against Haley regarding the terms, conditions, and privileges of employment in violation of these statutes.

12. This matter in controversy exceeds, exclusive of interest and costs, the minimum jurisdictional limits of this Court.

## STATEMENT OF FACTS

13. Haley is a female and currently age sixty-three. Haley commenced work as a general clerk for Coopers & Lybrand, on April 25, 1995, in Dallas, Texas. Haley was promoted to an associate at Coopers & Lybrand in 1997 or 1998. In 1998, Coopers & Lybrand merged with PriceWaterhouse and became PricewaterhouseCoopers ("PwC"), and Haley

continued work as an employee of PwC. Haley was promoted several times at PwC, eventually to the position of Finance Manager.

14. In 2007, PwC restructured, and Haley was laid off on November 30, 2007, when her position was phased out. In November 2008, Haley was contacted by a recruiter regarding potentially returning to PwC, and on January 9, 2009, she returned to work as a Senior Associate in the Dallas office. Her offer letter indicated that she would be promoted back to Finance Manager once she earned a degree, as PwC was now requiring a degree to hold a position at that level. Initially, Haley reported to Ann Belzner ("Belzner"), Managing Director, Caucasian, out of the Washington D.C. office. Belzner reported to John Davies ("Davies"), Senior Tax Partner, Caucasian, also out of the D.C. office. Davies wanted Haley to work in the Master Limited Partnership ("MLP") tax practice. Because it was anticipated that the revenue of the group in Dallas would be reduced in coming years when they would lose market share, Haley was brought into the MLP department to provide financial oversight, including cost management and budgeting.

15. Haley first reported discrimination at PwC in March 2011. At that time Mike Pagel ("Pagel"), was Managing Director of the MLP practice, Caucasian. Pagel reported to Chris Buckalew ("Buckalew"), Senior Partner, Caucasian, until his retirement, when he was replaced by Rob Baldwin ("Baldwin"), Senior Partner, Caucasian. The stepdaughter of Buckalew was working in the Dallas office and was paid pursuant to PwC policy regarding how her time had been submitted, but due to how it had been submitted she did not get paid some overtime she had worked. Pagel came to Haley's office and yelled at her and threatened to fire her due to the payment issue. It was very loud and numerous people in the office were taken aback by his verbal attack. Haley complained to Belzner that she felt

the way Pagel treated her was discriminatory, and Belzner agreed and affirmed Haley was doing an awesome job. However, Belzner told Haley that she would not be able to continue working at PwC if she filed the EEOC complaint, and Haley therefore decided not to file a charge.

16. After Haley's discrimination complaint, Ray Busher ("Busher"), Partner, Caucasian, made a serious mistake resulting in several clients being given inaccurate K-1s, which was expensive to fix. Pagel took Busher off project director duties instead of terminating him. Pagel directed Haley to start reporting to Busher in June 2011 and said that Haley should teach him how to perform her job duties. Busher told Haley that Pagel was putting him over her in hopes that she would quit. Busher also said that he was moving into her office and she would have to move to a cubicle. When Haley moved to the cubicle, Busher said that he was surprised that she came back to work and asked her why she was "still here." Busher quit working for PwC in November 2011, and subsequently Haley reported to Pagel, as the Dallas MLP office had been moved to the management structure of the regular PwC tax department from the specialty tax practice out of Washington, D.C.

17. Haley obtained a B.A. degree in general studies in May 2011 and a B.S. in accounting in May 2012 but was not immediately promoted to Finance Manager as she had been promised when she returned to work at PwC in 2009. Haley further obtained a master's degree in accounting in May 2014. Eventually Haley was promoted to Finance Manager in July 2015.

18. In the performance reviews Haley received in 2013 and 2014, she received a "1" rating and was placed on the promotion list at PwC. Her placement on the list was rescinded when there was a problem with her credential, but Haley was placed back on the list when the issue was resolved. Haley again received a "1" rating again for 2015. Haley continued her

successful job performance, receiving either "2" or "3" ratings for her job performance reviews from 2016 to 2018. When she was given the "3" rating in 2018, Haley asked why it had dropped from previous reviews, but Pagel just said it was due to the forced distribution system they used in doing the reviews. Haley felt this score was unfair due to her work performance as she had set out in a timely submitted self-performance assessment she had given him, but he admitted he gave her the "3" score before she submitted her self-assessment. Shortly after giving her this review, in May 2018, Pagel had a conversation with Haley in which he said he knew he could not ask her how old she was. Haley felt he was fishing to find out her age and indicated that they were close in age.

19. Part of Haley's job responsibilities involved ensuring that the Authorization for Services (AFS) was completed, which was a document indicting that the audit department was aware that there was a client being provided a tax service. Buckalew had to sign off on each AFS that Haley completed, but he disliked this type of work and eventually Pagel was promoted to Operations Partner so that he could sign off on the AFS. Partners also had to sign-off on all of their engagements, which was time consuming, and many of them failed to do so despite Haley's requests. Once Pagel was promoted he did the sign-offs by signing in to the system under the names of other Partners and signing off for them. In 2014 or 2015, however, PwC went to a "single signer" system, which required signatures to be on the signer's own computer, and because Pagel could no longer just open sessions up to sign off for others, there began again to be an issue with getting the sign-offs done. Eventually in 2017, Q&RM advised that they would be shutting down engagements if sign-offs were not completed. Haley drafted an email advising the department of the threat by Q&RM to shut down engagements if sign-offs were not completed, which was approved by the

Q&RM Partner, Robert Love ("Love"). Haley sent out the email, and Pagel was on a sabbatical so he did not see it, and the sign-offs were successfully accomplished.

20. In June 2017, Q&RM put a compliance restriction on the Dallas MLP office due to continued issues with sign-offs and started a conference call bi-weekly to improve performance. After a number of these calls, Q&RM leadership noted to Haley that it had become clear to them that the issue was not her fault, but the fault of the Partners in the Dallas office. In September 2018, Q&RM again told Haley that engagements would be cut off if the sign-offs were not completed. Haley asked Mike Petrecca ("Petrecca"), Q&RM Partner who had replaced Love, Caucasian, if she should send the same email to the Dallas office she had sent the previous year, and he said yes, so Haley sent this out on October 1, 2018. However, this time Pagel was back in the office after his sabbatical and he saw the email. He became very angry when he read it and called Halley and threatened to fire her.

21. Immediately after Pagel threatened to fire her, Haley complained to the EthicsHotline and BreAnne Walsh-Paul ("Walsh-Paul"), HR representative, Caucasian, that she felt the threat was discriminatory. Walsh-Paul indicated she would discuss the complaint with Pagel, but instead of addressing the complaint she came back to Haley and told her that Baldwin had made a complaint about Haley not putting a finance report in a new format. Haley presented evidence to Walsh-Paul that she had completed and emailed the report to him in the format requested on April 1, 2018, but that he did not respond to her about it until after she made her complaint about Pagel, even though she had followed up with him in two emails requesting feedback. Despite the fact Haley refuted that she had not provided the report, Walsh-Paul stated to Haley that she told Baldwin to write up a complaint about her and put it as a negative in her annual performance review.

22. Haley also reported the threat by Pagel to fire her to Petrecca, and he said Q&RM was coming to the office at the end of the month for a review and that he would talk to Pagel. When Petrecca came to the office after the review he asked Haley to meet some of the Q&RM partners who had done the review. When Haley came to the conference room she received a standing ovation from the Q&RM partners. They said the department had very successfully passed the review and that they had never seen MLP look so good due to her hard work. Petrecca assured Haley he had spoken to Pagel and he would not again be threatening to fire her. Within a couple of weeks of her complaint to ethics and HR, Baldwin asked Haley to send him a copy of her performance review, which is something he had never requested in the ten years she had worked in the practice.

23. Despite the successful Q&RM audit in October 2018, when Haley got her performance review in June 2019 from Pagel, she received a negative "4" overall performance rating, which is a "needs improvement" rating. The review did not even acknowledge the passing of the office review in October 2018, and the only negative item referenced was the alleged failure to provide the financial report to Baldwin, which she had already shown was timely provided. The performance review score was given by Pagel with the approval of the annual review committee, who are all Caucasian. Haley requested Pagel give her a description of specific tasks that caused her rating to go from a "2" in the previous year to a "4," but Pagel indicated that it was a result of a forced distribution of scores.

24. PwC requires anyone receiving a "4" performance review score to be put on a performance improvement plan (PIP), so in the performance review meeting Haley requested her PIP. However, Pagel said it had not been drafted and he would do that in a couple of weeks. Given her successful hard work on the QR&M in 2018, Haley felt the performance review

was unfair. Haley filed a complaint with ethics and HR about the performance review, asserting that the review was retaliatory due to her prior ethics and HR complaint.

25. Haley was put on the PIP in July 2019. The PIP failed to list specific elements that Haley needed to improve. Instead, it stated that Haley was to train MLP Partners on Sales Force, which she had already been doing, as well as provide additional training to the staff. The PIP further required Haley to start coming to work at the office every day, when she had been working from home since 2012 with Pagel's permission. Pagel had previously referred to Haley as the "poster child" for remote work as she was always available and responsive during the workday. The PIP provided for Haley to have weekly meetings about the PIP with Pagel. Generally, the meetings would be about five minutes and Haley would be told everything was good and she would not be given any feedback. It was clear to Haley the PIP was a "dummy" plan meant to try to cover up the fact the poor performance review was a result of retaliation of Haley's earlier ethics and HR complaints. Haley successfully completed the PIP in October 2019.

26. The Tax Cuts and Jobs Act (TCJA) of 2017 had a negative impact on this service as it reduced corporate tax rates to 21%, thereby eliminating the need for corporations to utilize tax shelters through partnerships and S corps. As a result, in 2018, most corporations began eliminating these partnerships and S corporations by acquiring and/or merging them into the parent corporation, which significantly decreased MLP's revenue. As a result of the decreased revenue, in the summer of 2019, PwC offered severance packages to a number of Directors, who were male and Caucasian. Some Directors and about seven Managers, as well as seniors associates and administrative employees, were allowed to transfer out of the MLP practice to other practices in the firm. These other employees were Caucasian, male, and/or substantially younger than Haley. However, because Haley had received a "4"

rating in her May 2019 performance review, in retaliation for her complaint to ethics and HR about Pagel, she was not able to transfer internally. Pursuant to PwC policy, Haley also did not receive a bonus or a pay increase in 2019.

27. After working through the PIP, Haley continued training managers on quality and risk management procedures and Salesforce, and she also drafted training guides, in addition to maintaining her usual responsibilities of financial analysis, financial reporting, ad hoc reporting, and month and year-end closing. After the tax year ended in April 2020, Haley began year-end procedures and she completed them by the June 30 fiscal year end. Haley did not receive her performance review in April or June as she would have normally, and there was a firmwide communication that performance reviews would be provided in June 2020. At the end of May 2020, the CEO of PwC further announced in a weekly live webcast that all terminations were being put on hold due to Covid.

28. When the Black Lives Matter protests began in 2020, PwC made push to "address" the movement. On the weekly webcast call the Partners were told to reach out to everyone in their groups to have discussions about the BLM movement. There were six partners in the MLP practice who were supposed to reach out to all non-Whites, but no one reached out to Haley. For several years Haley had been the only African American manager, but her input was not sought on racial issues in MLP, despite it being known she had previously complained about race discrimination.

29. Haley was not given her performance review in June 2020. In retrospect, her review date was pushed out and Pagel requested for Haley to complete the QR&M processes for the October 2020 beginning of the tax year. Haley was told to attend a performance review meeting on July 9, 2020. At that meeting Haley was given a "5" performance review rating. Haley is unaware of any rule at PwC that requires an employee who receives a "5" on a

performance review to be terminated. Haley was told the rating and termination was because she did not come into the office every day, when Haley had been coming into the office when requested since November 2019, except for time she was provided flexibility during a kitchen renovation. Haley would not be eligible to a "right of return," which is customary for employees who are offered a severance package. Thus, Caucasian, male and/or substantially younger employees in the MLP department who were down-sized in 2019 received both a severance package and a right to return. Haley was also terminated despite the announcement that terminations had been put on hold due to Covid. It is normal for PwC to immediately terminate employees, but Haley was given an effective termination date of July 30, 2021, several weeks after she was told of the termination. It was clear the effective date of termination was due to Pagel asking her to reach out to several staff and train them on some of her job duties before she left PwC.

## ADEA AND TCHRA

30. Haley incorporates by reference paragraphs 13 to 29 herein.

31. Haley was born June 24, 1958, and she is currently age 63. Haley is a member of the protected age group within the meaning of the ADEA.

32. At all times material to this action, PWC employed at least twenty employees and is an employer with the meaning of the ADEA.

33. At all times material to this action, PWC employed at least fifteen employees and is an employer with the meaning of the TCHRA.

34.  A. PWC employs more than 100 employees;
     B. PWC employs more than 200 employees;
     C. PWC employs more than 500 employees.

35. All conditions precedent to the filing of this suit have been met:

    A. On or around May 5, 2021, Haley filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission ("TWC"), alleging age, sex, race, and retaliation discrimination;

    B. More than 180 days have passed since the date the charge was filed.

36. Haley alleges that PWC, in a continuing course of conduct, discriminated against her in the terms, conditions and privileges of employment because of her age, and specifically in subjecting Haley to less favorable working conditions than those to which younger employees were subjected, including in failing to apply employee rules and/or performance standards equally and in terminating her employment effective July 30, 2021.

37. Haley alleges that PWC's age discrimination conduct is willful under the ADEA.

## TITLE VII AND TCHRA RACE, SEX, AND RETALIATON DISCRIMINATION CLAIMS

38. Haley is female and African-American and she is therefore is a member of a protected sex and race classes within the meaning of Title VII and the TCHRA.

39. All conditions precedent to the filing of this suit have been met:

    A. On May 5, 2021, Haley filed a charge of discrimination, Charge No. 450-2021-03862, with the Equal Employment Opportunity Commission ("EEOC") and TWC alleging disability, race, and retaliation discrimination;

    B. More than 180 days have passed since the date the charge was filed and Haley has requested a Notice of Right to Sue from the EEOC.

40. Haley alleges that PWC, through its employees and agents, engaged in a continuing course or discriminatory conduct against her because of disability, race, and/or in retaliation for her opposition to discriminatory employment practices in violation of the Title VII and the TCHRA, and specifically:

    A. PWC subjected Haley to less favorable working conditions than those to which male and non-African-American employees were subjected, including in failure to apply employee work rules policies equally; provision of s PIP; and termination of Haley's employment on July 9, 2020;

B. PWC retaliated against Ogbogu for her opposition to its discriminatory employment practices, by terminating her employment effective July 30, 2020.

41. PWC engaged in the conduct described above with malice or reckless indifference to the Title VII and TCHRA employment rights of its employees including Haley.

## 42 U.S.C. § 1981 CLAIM

42. Haley incorporates herein all the allegations of discrimination and retaliation listed in this Complaint.

43. Haley alleges that PWC discriminated against her in the making of a contract of employment, on the same terms it offered to non-African-American employees and/or employees that did not protest discrimination. Such refusal was undertaken for the purpose of interfering with and avoiding the rights of Haley and the contractual obligations of PWC in violation of 42 U.S.C. § 1981.

44. PWC's actions in discriminating and retaliating against Haley, including terminating her employment, were intentional acts of racial discrimination in violation of 42 U.S.C. § 1981.

45. PWC's actions were undertaken for the specific purpose of interfering with and avoiding the contractual obligations of PWC and the contractual rights of Haley, in violation of 42 U.S.C. § 1981.

46. Haley has no plain or adequate remedy at law to correct the wrongs complained of herein, and has thus instituted this suit for damages, declaratory relief and injunctive relief provided for under the ADEA, Title VII, the THCRA, and 42 U.S.C. § 1981. Further, Haley is now suffering and will continue to suffer irreparable injury from PWC's policies, practices, customs, and usages, set forth herein.

## RELIEF REQUESTED

47. Haley requests that this Court grant her the following relief from PWC:

- A. A declaratory judgment against PWC, declaring its past practices herein complained of to be unlawful under the ADEA, Title VII, the THCRA, and 42 U.S.C. § 1981;

- B. A permanent injunction, enjoining PWC from continuing to discriminate against her on account of age, sex, race, in violation of the ADEA, Title VII, the THCRA, and 42 U.S.C. § 1981;

- C. Backpay, front pay, retroactive seniority, pension benefits, bonus payments, health benefits, and any other relief necessary to compensate Haley for damages for violations of the ADEA, Title VII, the THCRA, and 42 U.S.C. § 1981;

- D. Liquidated damages for PWC's willful violation of the ADEA;

- E. Implementation of a clear and effective grievance procedure for employment discrimination complaints with an effective non-retaliation provision;

- F. Attorney fees from PWC for the prosecution of her ADEA, Title VII, the THCRA, and 42 U.S.C. § 1981 claims;

- G. Costs for the prosecution of the ADEA, Title VII, the THCRA, and 42 U.S.C. § 1981claims, including the cost of expert witness fees;

- H. Pre-judgment interest at the legally prescribed rate from the date of the violations until judgment as well as post-judgment interest as applicable;

- I. Such other general relief to which Haley is justly entitled.

## **JURY DEMAND**

47. Haley demands a jury on all ADEA claims, specifically, the ultimate issues of fact as to the merits of the dispute, backpay, frontpay, employee benefits, and compensatory and punitive damages, excepting the attorneys' fees issues.

Respectfully Submitted,

/s/ Jane Legler
Jane Legler
Texas Bar No. 03565820
Christine Neill
Texas Bar No. 00796793
Kyla Gail Cole
Texas Bar No. 24033113

Neill Legler Cole PLLC
3300 Oak Lawn Avenue, Suite 425
Dallas, Texas 75219
(214) 748-7777
(214) 748-7778 (facsimiles)
christine@nlcemployeelaw.com
jane@nlcemployeelaw.com
kyla@nlcemployeelaw.com

Attorneys for Plaintiff